*United States v. Brooks*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of September, two thousand twenty.

PRESENT: RICHARD J. SULLIVAN,
MICHAEL H. PARK,
WILLIAM J. NARDINI.
*Circuit Judges.*

------------------------------------------------------------------

UNITED STATES OF AMERICA,

*Appellee*,

v. No. 19-1585

JOHN BROOKS,

*Defendant-Appellant.*

------------------------------------------------------------------

FOR APPELLANT: BENJAMIN W. HILL, Capezza Hill, LLP, Albany, NY.

FOR APPELLEE:                    RAJIT S. DOSANJH, Assistant United States Attorney, *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Syracuse, NY.

Appeal from judgment of the United States District Court for the Northern District of New York (Gary L. Sharpe and Mae A. D'Agostino, *Judges*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant John L. Brooks appeals from his conviction for evidence tampering, in violation of 18 U.S.C. § 1512(c)(1), following a four-day jury trial.[1]   On appeal, Brooks contends that (1) there was insufficient evidence supporting his conviction, (2) the district court deprived him of the right to a fair trial by admitting evidence about grand jury proceedings that occurred after the alleged evidence tampering, (3) the government constructively amended the indictment, and (4) various statements and evidence should have been suppressed.   We assume the parties' familiarity with the underlying facts, the

---

[1] Judge Sharpe decided Brooks's motions to dismiss the indictment and to suppress evidence. Judge D'Agostino presided at trial and sentencing, and decided Brooks's pre-trial motion to exclude evidence and post-trial motions.

record of prior proceedings, and the issues on appeal, to which we refer only as necessary to explain our decision.

## I. Sufficiency of the Evidence

We review Brooks's preserved sufficiency claim *de novo*. *See United States v. Pierce*, 785 F.3d 832, 837 (2d Cir. 2015). A defendant challenging the sufficiency of the evidence bears "a very heavy burden," *United States v. Desena*, 287 F.3d 170, 177 (2d Cir. 2002), as we must uphold the jury's verdict so long as "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Brooks fails to meet this high standard.

Section 1512 makes it illegal to "corruptly" "conceal[]" or attempt to conceal an "object" with the "intent to impair the object's integrity or availability for use in an official proceeding." 18 U.S.C. § 1512(c)(1). A "proceeding before . . . a Federal grand jury" is an "official proceeding." *Id.* § 1515(a)(1)(A). To prove a violation of section 1512, "the government must show that there was a nexus between the defendant's conduct and the pending, or foreseeable, official proceeding." *United States v. Pugh*, 945 F.3d 9, 21 (2d Cir. 2019) (internal quotation marks omitted).

Brooks contends that there was insufficient evidence of a nexus between his acts and the two official proceedings at issue – two future grand jury investigations – since, at most, he "knew his actions could potentially affect an ongoing investigation." Brooks's Br. at 14. But it is well established that a defendant need not know about a specific grand jury investigation for one to be foreseeable. *See United States v. Binday*, 804 F.3d 558, 590–91 (2d Cir. 2015). Rather, a grand jury proceeding is foreseeable if "the defendant was aware 'that he was the target of an investigation.'" *Id.* at 590 (quoting *United States v. Persico*, 645 F.3d 85, 108 (2d Cir. 2011)).[2]

Here, there was more than sufficient evidence for the jury to conclude that Brooks knew that his actions were likely to affect an ongoing investigation. Brooks bought 13 guns at a gun show in Akron, Ohio for Marcel Hooks ("Marcel"), and learned shortly thereafter that Marcel would take the guns to New York. **[App'x 898]** He knew that purchasing the guns for Marcel was illegal under federal law at the time he did it, since he completed a form falsely attesting that he was the

---

[2] Brooks seems to overlook that foreseeability is the touchstone here: Showing that a defendant knew he was a target of an investigation is just one way to prove foreseeability – but it is by no means a required showing. To hold otherwise would inject a degree of formalism neither called for by the statute nor consistent with our precedent. Brooks's suggestion that we define "target" as it is defined in the Department of Justice's *Justice Manual* would, if adopted, only worsen that problem. *See* U.S. Dep't of Justice, *Justice Manual*, tit. 9, ch. 9-11.151.

"actual transferee/buyer" of the guns, which specifically warned him that a false attestation that one is the "transferee/buyer is a crime punishable as a felony under Federal law." App'x 744–45, 750–51, 757–58, 760–61. And, as in *Binday*, Brooks knew that officials were investigating that straw purchasing scheme "in which he participated and about which he possessed incriminating [evidence]." 804 F.3d at 591. The evidence showed that Marzette Hooks, with whom Brooks had also colluded to buy the guns, called Brooks to inform him that the stash house in Albany, New York where one of the guns was stored had been searched, and warned Brooks that he might have to "pay a fine" and "appear in court." App'x 866. Not long after, another member of the colluding team attended a proffer session, where an investigator introduced himself as an ATF agent and another ATF officer explained "the details of what we had learned from our investigation." App'x 437–38. Later that same day, Marcel told Brooks to "come get [the guns] now" because "the heat was on." App'x 878. Brooks did so, believing that the men in New York were being surveilled by law enforcement. He then returned to Ohio with the guns, which enabled him to falsely assert that the firearms had never left his possession and that the forms he completed at the time of purchase were accurate. Indeed, when confronted by ATF agents in Ohio, Brooks repeatedly lied

5

about the scheme and the fact that he had sold the firearms to Marcel and others so that they could take them to New York.

On this record, the jury was surely justified in finding that Brooks possessed the requisite wrongful intent under section 1512.

## II. Evidence Regarding Subsequent Grand Juries

Brooks next contends that the district court deprived him of his right to a fair trial by admitting prejudicial evidence regarding two grand juries, neither of which was convened until after he concealed the guns. Under Federal Rule of Evidence 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

There was no "clear abuse of discretion" – nothing "arbitrary and irrational" – in the district court's decision to admit evidence about the ATF investigations and the two grand jury proceedings. *United States v. Gupta*, 747 F.3d 111, 132 (2d Cir. 2014) (internal quotation marks omitted). While not determinative, the fact of a grand jury proceeding is logically related to whether such a proceeding was foreseeable. Moreover, the government was required to show that the "official proceeding" was federal in character, *see* 18 U.S.C. § 1515(a)(1)(A), and was

permitted to rebut the defense's argument that no federal proceeding was foreseeable because the only relevant investigation was entirely local in character.

We also reject Brooks's contention that he was forced to defend the Ohio charge on the merits. The government referenced only the existence of the Ohio grand jury – not that it had indicted Brooks – and the district court made clear that Brooks was "not on trial for what he did in Ohio" but "only . . . the crime charged in the indictment." App'x 305. Juries are presumed to follow their instructions, *see United States v. Downing*, 297 F.3d 52, 59 (2d Cir. 2002), and we have no reason to find that they did not do so here.

### III. Constructive Amendment

Brooks also urges us to find that the government constructively amended his indictment during the trial. "A constructive amendment occurs when the charge upon which the defendant is tried differs significantly from the charge upon which the grand jury voted," either "where (1) an additional element, sufficient for conviction, is added, or (2) an element essential to the crime charged is altered." *United States v. Dove*, 884 F.3d 138, 146 (2d Cir. 2018) (internal citations omitted). In assessing such challenges, we have "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the

7

core of criminality to be proven at trial." *United States v. Patino*, 962 F.2d 263, 266 (2d Cir. 1992) (internal quotation marks omitted).

Brooks was on clear notice of what would be proven. The indictment charged that, "[o]n or about April 29, 2017, in Albany County . . . and elsewhere, . . . [Brooks] attempt[ed] to corruptly conceal . . . one or more firearms he purchased on March 18 and 19, 2017" with the "intent to impair the [guns'] availability for use in an official proceeding." 17-cr-402, Doc. No. 1. The government did not add or alter an essential element of the charge by referring to the grand jury proceeding in Ohio, since the indictment was not limited to New York. In fact, the government notified Brooks in its pretrial submissions that the "official proceedings" it would prove were grand jury investigations in both Ohio and New York. Nor did the evidence regarding the straw purchases somehow change the "core of criminality"; Brooks was charged with concealing those very guns, so evidence of that underlying scheme was directly relevant to his prosecution under section 1512. Finally, it cannot be said that the government's arguments to the jury about Brooks lying to investigators altered the government's theory as to the "core of criminality" at issue here. We therefore reject Brooks's constructive amendment argument in its totality.

## IV. Suppression of Evidence

Brooks next challenges the district court's denial of his motion to suppress the statements he made during his interview with investigators on May 3, 2017, and the firearms they seized that day from his home.

Statements made during a custodial interrogation are generally inadmissible unless the defendant receives certain procedural protections. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Since it is undisputed that Brooks did not receive a *Miranda* warning before his May 3, 2017 statements, we consider only whether he was in "custody" for *Miranda* purposes – which requires that we look to "all the surrounding circumstances" to decide if "a reasonable person" (1) "would have thought he was [not] free to leave the police encounter at issue" and (2) "would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *United States v. Faux*, 828 F.3d 130, 135 (2d Cir. 2016) (internal quotation marks omitted).

We agree with the district court that this was not a custodial interview. After the ATF agents contacted Brooks, he elected to meet with them, chose the meeting location, met them in a public parking lot, and agreed to talk to them in a rental car. The investigators' weapons were not visible, and the car doors were

not locked. And, as the district court found, the interview was conducted in a calm, professional manner. Under these circumstances, a reasonable person would have no reason to believe that they were not free to leave.[3]

We also agree with the district court that the search of Brooks's home was voluntary. "The ultimate question presented is whether the officer had a reasonable basis for believing that there had been consent to the search." *United States v. Isiofia*, 370 F.3d 226, 231 (2d Cir. 2004) (internal quotation marks and brackets omitted). Brooks himself asked the officers if they wanted to see the firearms at his house and welcomed them inside, and the only "restraint" that the officers imposed on Brooks – requesting that he not handle the firearms himself – did not somehow undermine the voluntariness of that search.

We have considered Defendant's remaining arguments and conclude that they are without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

---

[3] In light of our conclusion, we reject Brooks's argument that a later *Miranda* warning was "ineffective because the prior May 3, 2017 statements were obtained in violation of *Miranda* and thereby tainted the second interrogation." Brooks's Br. 35–36.